IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

Anja Salamack,
    Plaintiff                                          3:24-cv-33

v.

Northshore VI, LLC, and
Steven Shore
    Defendants
_____/

## COMPLAINT

Anja Salamack by and through her attorneys, Michael L. Sheesley LLC, brings this Complaint as follows:

### Exhibits

| Exhibit No. | Description |
|---|---|
| 1 | Warranty Deed |
| 2 | Promissory Note ($1 Million) |
| 3 | Promissory Note ($175,000) |
| 4 | First Priority Mortgage |

### I. PARTIES

1. Anja Salamack is a competent adult, a resident and citizen of the state of Florida for purposes of diversity jurisdiction, with an address of 5315 Jackson Street, Hollywood, FL 33021.

2. Northshore VI, LLC is a U.S. Virgin Islands limited liability company with a resident agent of Steven Shore having an address of 17-5b Estate St. Peter, St. Thomas, VI 00802. The current, sole member of Northshore VI, LLC is Steven Shore, a citizen of the U.S. Virgin Islands for diversity jurisdiction purposes.

3. Steven Shore is a competent adult, a citizen of the U.S. Virgin Islands for diversity jurisdiction purposes, with an address of 17-5B Estate St. Peter, St. Thomas, VI. Upon information and belief, a licensed real estate agent in the U.S. Virgin Islands

### II. JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in the district of St. Thomas and St. John pursuant to 28 U.S.C. § 1391 as the Defendants are subject to jurisdiction of this Court, substantial parts of the acts and omissions occurred in the district of St. Thomas and St. John, and the real property at issue is located in the district of St. Thomas and St. John.

6. Supplemental jurisdiction for Territorial law claims exists under 28 U.S.C. § 1367(a).

### III. FACTUAL BACKGROUND

7. Salamack was the previous owner of

    **Parcel No. 17-5B Estate St. Peter**
    **No. 2 Little Northside Quarter**
    **St. Thomas, U.S. Virgin Islands**
    **consisting of approximately 0.500 U.S. acres, more or less**
    **as shown on P.W.D. No. D9-7184-T003**
    (the "Property)

8. In 2022 Salamack became interested in selling the Property.

9. Salamack owned the Property free and clear – there was no mortgage on the Property.

10. Salamack listed the Property for sale with Sea Glass Properties under an exclusive listing agreement.

11. During the time that Sea Glass Properties listed the Property for sale, there was not a buyer for the Property.

12. The listing agreement with Sea Glass Properties expired.

13. In the St. Thomas airport, Ms. Salamack met Hannah Carty who told Ms. Salamack that she was a real estate agent.

14. Ms. Salamack agreed to list the Property for sale with Hannah Carty.

15. Hannah Carty was a real estate agent who worked for Offshore Real Estate – a real estate brokerage owned by real estate broker Steven Shore.

16. On or about November 4, 2022, Salamack signed an Exclusive Brokerage Listing Agreement which gave the exclusive right to list the Property for sale to Offshore Real Estate (the "Listing Agreement").

17. Pursuant to the Listing Agreement Offshore Real Estate, Hannah Carty, and Steven Shore were "Seller's Agent" which required:

    **Seller's Agent:** In this relationship, the **Seller** becomes the **Listing Brokerage's** *client*. This means the **Listing Brokerage**, and the agents who work for it, solely represent the seller and owe the seller undivided loyalty, utmost care, disclosure, obedience to lawful instruction, confidentiality and

accountability. They must put the seller's interests first and negotiate for the best price and terms for the seller.

18. Offshore Real Estate, Hannah Carty, and/or Steven Shore never listed the Property for sale.

19. Instead, almost immediately, Steven Shore began to scheme to take control and ownership of the Property.

20. By November 16, 2022, Steve Shore convinced Salamack to sign a contract of sale agreeing to sell the Property to Steve Shore on extremely unfavorable terms.

21. Shore originally convinced Salamack to 'owner finance' $1,000,000.00 of the $1,250,000.00 purchase price at an interest rate of six percent (6%).

22. At the time of Shore convincing Salamack to agree to 'owner finance' the property at 6% the prime interest rate was seven percent (7%) – Shore schemed to have Salamack give Shore a subprime rate[1].

23. Later Shore would change the terms of the deal to have the entire purchase price of $1,250,000.00 'owner financed'.

24. English is not Salamack's first language.

25. Salamack is not an experienced real estate professional.

26. Shore did not adequately explain the original agreement and subsequent changes to Salamack.

27. Shore listed himself – Steve Shore – as the 'buyer's broker' on the contract.

28. Shore listed Hannah Carty as the 'listing sales associate' on the contract.

29. The 'selling brokerage' and 'listing brokerage' were both listed as Offshore Real Estate.

30. On November 18, 2022, Shore contacted Attorney Leigh Goldman (copying Salamack on the email) to act as the lawyer for the transaction.

31. Salamack understood that Attorney Goldman would be representing her and Shore in the transaction and would be looking out for the best interests of Salamack.

32. Shore engineered a scheme to form a limited liability company to take title to the Property at the time of the closing.

33. In furtherance of this plan, Northshore VI, LLC was formed.

---

[1] Traditional mortgage financing would be 'prime plus 1%' or 'prime plus 1.5%' for well qualified buyers.

In Shore's own words via email on November 18, 2022: "Anja one thing I mentioned to Leigh is titling in a LLC with both of us as member managers and a operating agreement that addresses survivorship will protect both of us and our heirs in the purchase process and in case of a death like we discussed yesterday. We make the purchase agreement part of the operating agreement of the LLC and at the time of pay off you come off the LLC."

34. Northshore VI, LLC was formed and Salamack was initially given 49% of the membership interests.

35. No operating agreement was ever signed.

36. The transaction moved towards a closing which occurred on February 15, 2023.

37. Northshore VI, LLC ("Northshore") owns property more particularly described as follows:

> **Parcel No. 17-5B Estate St. Peter**
> **No. 2 Little Northside Quarter**
> **St. Thomas, U.S. Virgin Islands**
> **consisting of approximately 0.500 U.S. acres, more or less**
> **as shown on P.W.D. No. D9-7184-T003**
> (the "Property)

A true and correct copy of the recorded warranty deed is attached as Exhibit 1.

38. On February 15, 2023, Northshore VI, LLC executed a promissory note in favor of Anja Salamack ("Salamack") in the initial principal amount of One Million Dollars ($1,000,000.00) ("Note 1" or "First Note"). A true and exact copy of Note 1 is attached as Exhibit 2.

39. On February 15, 2023, Northshore VI, LLC executed a promissory note in favor of Anja Salamack ("Salamack") in the initial principal amount of One Hundred Seventy-Five Thousand Dollars ($175,000.00) ("Note 2" or "Second Note"). A true and exact copy of Note 2 is attached as Exhibit 3.

40. At the closing, Shore executed a personal guaranty of the two promissory notes signed by Northshore VI, LLC.

41. As security for the repayment of Note 1, Northshore executed a first priority mortgage providing Salamack with a security interest in the Property. The first priority mortgage was executed on February 28, 2023 and recorded on March 7, 2023 as document # 2023001401 (the "Mortgage). A true and exact copy of the Mortgage is attached as Exhibit 4.

42. Northshore was required to execute a second priority mortgage providing Salamack with a security interest in the Property pursuant to the terms of Note 2, however Northshore has not executed the mortgage and despite demand has refused to execute a mortgage pursuant to Note 2.

43. Northshore has failed to, among other things, make the required payments of principal and interest to Salamack as required by the Note 1 and Note 2, and are, therefore, in default under

the terms and conditions of Note 1 and Note 2.

44. Salamack has made demand upon Northshore and Shore for payment of the overdue principal, interest and late fees.

45. Northshore and Shore have refused to insure the Property against windstorm, fire, and/or other casualty.

46. Northshore has failed to cure their defaults within the time provided and failed to pay all principal and interest due as demanded and, as a result, Salamack properly accelerated the loan.

47. Under the terms of the Mortgage any insurance premiums, taxes, assessments, fees, charges, fines or impositions paid on behalf of the Property, shall be included in the debt evidenced by Note 1 and Note 2.

48. Under the terms of the Mortgage Northshore is required to pay all costs and expenses, including attorneys' fees incurred by Salamack because of any default by Northshore under the Mortgage or Note 1 or Note 2.

49. Under the terms of the personal guaranty agreement Steven Shore agreed to be responsible for all amounts owed to Salamack.

## **COUNT 1 – FORECLOSURE OF MORTGAGE**

50. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

51. Defendants have failed and/or refused to make the payments to Salamack under the First Note, Second Note, and personal guaranty.

52. The Defendants are under default of the promissory notes and personal guaranty.

53. Proper demand has been made for payment.

54. The Defendants have failed to cure their defaults.

55. The Plaintiff is entitled to attorneys' fees and costs under the terms of the First Note, Second Note, and personal guaranty.

56. The Defendants have waived their rights to a jury trial.

57. The Plaintiffs seek foreclosure of the mortgage on the Property.

## COUNT 2 - FRAUD

58. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

59. Defendants' actions as set forth herein constitute fraud.

60. Particularly, Defendants by asserting an entitlement to a real estate commission were fraudulently asserting that the Defendants were entitled to the real estate commission.

61. Defendants also asserted in the Second Note that they would sign a mortgage to secure the Second Note – the Defendants never had an intention to sign the mortgage and have refused to do so.

62. The Plaintiff relied on these, and other misrepresentations of the Defendants.

63. The Defendants have also engaged in other fraudulent conduct which will be revealed through discovery and proven at trial in this matter.

64. The Plaintiff has been damaged as a result of the actions of the Defendants and are entitled to compensatory, incidental, consequential damages, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT 3 – UNJUST ENRICHMENT[2]

65. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

66. Defendants have taken a $75,000.00 real estate commission at the time of the closing of the property in February 2023.

67. The Defendants are aware that by taking a real estate commission without performing any work or without even listing the Property for sale the Defendants were being enriched at the expense of the Plaintiff.

68. The Defendants should be required to pay back the $75,000.00 to the Plaintiff.

69. The Plaintiff has been damaged as a result of the actions of the Defendants and are entitled to compensatory, incidental, consequential damages, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

---

[2] In order to recover for unjust enrichment a plaintiff must prove "(1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff. *Walters v. Walters*, 60 V.I. 768, 779 (V.I. 2014).

## COUNT 4 – BREACH OF FIDUCIARY DUTY

70. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

71. Pursuant to the Listing Agreement the Defendants were required to give Salamack "undivided loyalty, utmost care, disclosure, obedience to lawful instruction, confidentiality and accountability. [The Defendants] must put [Salamack's] interests first and negotiate for the best price and terms for [Salamack]."

72. The agreement by the Defendants placed the Defendants in a fiduciary relationship with Salamack.

73. Further, the code of ethics and rules that are required to be followed by real estate agents placed the Defendants in a fiduciary relationship with Salamack.

74. The Defendants breached and violated the fiduciary relationship with Salamack.

75. The Plaintiff has been damaged as a result of the actions of the Defendants and are entitled to compensatory, incidental, consequential damages, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT 5 – BREACH OF CONTRACT

76. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

77. The Listing Agreement was a contract between the Defendants and Salamack.

78. The Promissory Notes are contracts between Northshore and Salamack.

79. The personal guaranty is a contract between Shore and Salamack.

80. For instance, pursuant to the Listing Agreement the Defendants were required to give Salamack "undivided loyalty, utmost care, disclosure, obedience to lawful instruction, confidentiality and accountability. [The Defendants] must put [Salamack's] interests first and negotiate for the best price and terms for [Salamack]."

81. The contracts created obligations on behalf of the Defendants.

82. The Defendants have breached the obligations under the various contracts.

83. As a result of the breaches by the Defendants, Salamack has been damaged.

84. The Plaintiff has been damaged as a result of the actions of the Defendants and are entitled to compensatory, incidental, consequential damages, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT 6 – BREACH OF AGREEMENT[3]

85. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

86. The Listing Agreement was an agreement between the Defendants and Salamack.

87. The Promissory Notes are agreements between Northshore and Salamack.

88. The personal guaranty is an agreement between Shore and Salamack.

89. For instance, pursuant to the Listing Agreement the Defendants were required to give Salamack "undivided loyalty, utmost care, disclosure, obedience to lawful instruction, confidentiality and accountability. [The Defendants] must put [Salamack's] interests first and negotiate for the best price and terms for [Salamack]."

90. The agreements created obligations on behalf of the Defendants.

91. The Defendants have breached the obligations under the various agreements.

92. As a result of the breaches by the Defendants, Salamack has been damaged.

93. The Plaintiff has been damaged as a result of the actions of the Defendants and are entitled to compensatory, incidental, consequential damages, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT 7 – DEBT

94. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

95. Defendants, pursuant to the First and Second Note, are required to pay the amounts due under the First Note and Second Note – including penalties, interest, late fees, attorneys' fees and costs.

96. Defendants owe a debt to Plaintiff in an amount that can be determined by calculation.[4]

97. Pursuant to the personal guaranty Shore is responsible for the debts owed to Salamack.

98. Defendants are liable to Plaintiff for the amount of the outstanding debt, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT 8 – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

99. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

---

[3] The Supreme Court of the Virgin Islands has held that there is a difference between an agreement and a contract. *See Mosler v. Gerace,* 2024 VI 1, ¶ 24, 2024 WL 26761, *5 (V.I. Jan. 3, 2024).

[4] While the amount will change with time the amount owed is able to be calculated. The First and Second Note provided for interest, penalties, and fees and costs.

100. Every contract in the Virgin Islands carries the implied covenant to act in good faith and fair dealing in the performance and enforcement of a contract.

101. Plaintiff had contracts with the Defendants as alleged in the complaint, including but not limited to the First and Second Note.

102. The Defendants have failed to pay the amounts due under the First and Second Note – including penalties, interest, late fees, attorneys' fees and costs.

103. The failure to pay the amounts due under the First and Second Note – including penalties, interest, late fees, attorneys' fees and costs – is inconsistent with the reasonable expectations of Plaintiff.

104. Likewise, Defendants actions in relations to taking a real estate commission is inconsistent with the reasonable expectations of Plaintiff.

105. The Defendants are liable to Plaintiff for compensatory damages, incidental damages, punitive damages, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT 9 – FRAUDULENT MISREPRESENTATION[5]

106. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

107. The Defendants made multiple misrepresentations of fact, as set forth herein, but which included that Plaintiff would be timely paid.

108. The misrepresentations of fact, made by the Defendants, were known to be false at the time that Defendants made the misrepresentations.

109. Defendants made the misrepresentations in order to get money from Plaintiff, as well as to delay Plaintiff from exercising their rights in pursuing the collection of the amounts owed to Plaintiff.

110. Plaintiff justifiably relied on the misrepresentations made by Defendants; Plaintiff was not and is not sophisticated investors and/or sophisticated in real estate.

111. The Defendants are liable to Plaintiff for compensatory damages, incidental damages, punitive damages, as well as for all costs, expenses, attorneys' fees, and interest.

---

[5] The Superior Court of the Virgin Islands performed a *Banks* analysis for the elements of fraudulent misrepresentation and found: One who makes a misrepresentation of fact, opinion, intention, or law that he or she either knew or had reason to know was false, and that was made for the purpose of inducing another to act or refrain from acting on it, is subject to liability to the other for pecuniary loss caused by the other's justifiable reliance on the misrepresentation. *See Merchants Commercial Bank v. Oceanside Village, Inc.*, 2015 WL 9855658, *8 (V.I. Super. Ct. 2015).

## COUNT 10 – INFLICTION OF EMOTIONAL DISTRESS
### (intentional and/or reckless)

112. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

113. Defendants, in association with each other, through their extreme and outrageous conduct intentionally and/or recklessly engaged in extreme and outrageous conduct that exceeds all possible bounds of decency such that it is regarded as atrocious and utterly intolerable in a civilized society and have caused and continue to cause severe emotional distress to Plaintiff.

114. Defendants are liable to Plaintiff for compensatory, incidental, special, consequential, and punitive damages, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT 11 – INFLICTION OF EMOTIONAL DISTRESS
### (negligent)[6]

115. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

116. Defendants owed Plaintiff a duty of care to ensure Plaintiff does not suffer serious or severe emotional injury, that duty was imposed as an independent legal obligation as to the Defendants.

117. Defendants, in association with each other, breached their legal duty to Plaintiff.

118. Defendants, in association with each other, through their extreme and outrageous conduct intentionally and/or recklessly engaged in extreme and outrageous conduct that exceeds all possible bounds of decency such that it is regarded as atrocious and utterly intolerable in a civilized society and caused severe emotional distress to Plaintiff.

119. Defendants are liable to Plaintiff for compensatory, incidental, special, consequential, and punitive damages, as well as for all costs, expenses, attorneys' fees, and interest.

---

[6] "[N]egligent infliction of emotional distress is not a lesser-included offense of intentional infliction of emotional distress, so to speak[;] [t]hey are different torts." *Arnos v. Hess Corp.*, 71 V. I. 463, 507 (V.I. Super. Ct. 2019).

## COUNT 12 – Declaratory Relief[7]

120. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

121. There presently exists a substantial controversy between the Plaintiff and Defendants.

122. The Plaintiff and Defendants have adverse legal interests, of sufficient immediacy and reality for this court to issue a declaratory judgment.

123. Particularly, the Defendant Steve Shore in April 2024, without authorization, dissociated Anja Salamack from Northshore VI, LLC.

124. Shore did this as part of an authorized scheme to illegally take control of the Property.

125. Shore has declared his intention to declare bankruptcy for both himself and Northshore VI, LLC in the mistaken belief that it will result in Shore and Northshore being able to keep the Property without paying Salamack.

126. Shore also has a property on Water Island, USVI for sale that is expected to close in July or September 2024.

127. Shore will realize profits from this sale.

128. Despite owing Salamack significant money Shore will not pay the profits derived from the Water Island property sale to Salamack.

---

[7] The Declaratory Judgment Act allows that, "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The 'actual controversy' requirement in the Act reflects "Article III's limitation of federal courts' jurisdiction to 'Cases' and 'Controversies.' " *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 120 (2007).[4] The Supreme Court has acknowledged that it has "not draw[n] the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not." *Id.* at 127. Generally, however, appropriate disputes under the Declaratory Judgment Act must "be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that [they] be 'real and substantial' and 'admi[t] of specific relied through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

*The W. Indian Co. Ltd. v. Yacht Haven USVI, LLC,* No. 3:20-CV-0011, 2022 WL 819453, at *7 (D.V.I. Mar. 17, 2022)

129. If the Defendants are permitted to continue to their course of conduct Plaintiff will continue to be harmed.

130. Plaintiff's rights, status, and other legal relations have been and will be affected by Defendant's continued actions.

131. Plaintiff is entitled to a declaratory judgment (1) declaring that the First Note and Second Note are in default, (2) declaring that the First Note and Second Note are both secured by a mortgage on the Property,[8] (3) ordering Shore to vacate the Property and (4) ordering a return of the $75,000 real estate commission wrongful taken by the Defendants, and (5) ordering payment for all Plaintiff's damages.

132. A declaratory judgment by this court, as requested by Plaintiff, will serve a useful purpose and help resolve a controversy between the parties.

## PRAYER FOR RELIEF

WHEREFORE Salamack respectfully requests:

a. judgment declaring that Northshore has defaulted under Note 1 and Note 2, thereby entitling Salamack to exercise all of the remedies provided for in those instruments, including foreclosure of her lien covering the Property;

b. judgment declaring the amount of the outstanding unpaid obligations Note 1 and Note 2, including principal, interest, late charges, costs, expenses, and attorneys' fees;

c. judgment adjudicating the relative priority of liens covering the Property and ordering the Property be seized, and that Salamack be paid from the proceeds of the sale all amounts due on Note 1 and Note 2 including, but not limited to, any sums that Salamack may pay for insurance premiums, taxes, fees, and assessments on behalf of the Property, with interest, from the date of payment;

d. judgment declaring that Northshore, and all persons claiming from and under them are barred and forever foreclosed of all right, title, lien, claim and equity of redemption in and to any of the Property, subject only to any applicable statutory right of redemption, except where waived and released;

e. judgment setting forth all of the terms and conditions of the foreclosure sale and providing that Salamack may bid in all or a portion of her judgment recovered in this action;

f. judgment against Northshore, for any deficiency that may remain after the sale of the Property;

---

[8] Shore has threatened bankruptcy stating that the Second Note is 'unsecured' (as a result of Shore and/or Northshore not executing a mortgage) and will be discharged in a bankruptcy proceeding.

g. judgment appointing a receiver, if separately requested by Salamack, to take possession, custody, and control of the Property pending final disposition of this matter, pursuant to the orders of this Court;

h. declaratory judgment as requested herein;

i. compensatory, incidental, special, consequential, and punitive damages, as well as for all costs, expenses, attorneys' fees, and interest.

j. judgment awarding Salamack such further relief as is just and equitable.

Dated:  June 20, 2024

Respectfully Submitted,
**Michael L. Sheesley LLC**

s/Michael L. Sheesley
Michael L. Sheesley
V.I. Bar #1010
Condo Torre Del Mar, Apt 2201
1477 Ashford Ave
San Juan, PR 00907
Telephone: (412)972-0412
michael@sheesley-law.com