# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement (the "Agreement") is made, entered and effective as of the 24th day of February 2025, by and between Anja Salamack ("Salamack") and Steven Shore and Northshore VI, LLC and all heirs, agents, assigns, representatives and/or successors in interest, (collectively "Shore"). All aforementioned individuals/entities are collectively referred to as the "Parties."

**WHEREAS**, a lawsuit was filed captioned *Salamack v. Northshore VI, LLC and Steven Shore*, case no. 3:24-cv-33 in the District Court of the Virgin Islands, involving property known as 17-5B Estate St. Peter, St. Thomas, VI (the "Property");

**WHEREAS**, the Parties desire to resolve differences between them upon the terms and conditions set forth in this Agreement.

**NOW THEREFORE**, in consideration of the mutual promises and agreements set forth below, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Shore shall vacate the Property by March 26, 2025 and leave the Property in 'broom clean' condition. Shore shall leave all appliances in the Property. Salamack shall be entitled to have access to the Property starting on March 24, 2025 for inspection purposes. If there is any damage to the Property Shore agrees to be financially responsible for such damages.

2. Shore shall pay all property taxes for the Property through and including March 26, 2025 (the prorated property taxes for 1/1/25 – 3/26/25 are $1,048.11)[1] which will be paid by March 31, 2025. A tax clearance letter evidencing payment through the 2024 tax year as well as the $1,048.11 payment made to Anja Salamack will be provided at closing. Closing will take place on or before April 8, 2025.

3. Shore shall pay the amount of $35,000.00 at closing. Funds shall be in readily available funds, such as a cashiers check, or a check from Attorney Clive Rivers' trust/escrow account. Failure to make this payment by April 8, 2025, will result in Salamack being permitted to pursue all claims in this matter with the exception of the foreclosure claim(s).

4. Shore shall pay all utilities associated with the Property through and including April 8, 2025.

5. Shore shall pay for a for a title report to be delivered on or before March 26, 2025. The title report shall be obtained from either Anchor Title Company (Linda Berry) or Streamline Title Company (Jillian Pothier).

6. Shore shall cause a deed in lieu of foreclosure to be signed by the Defendants to be delivered in the original to the office of the mediator, Henry C. Smock, before closing.

---

[1] 85 days between 1/1/25 and 3/26/25 divided by 365, times $4,500.72 = $1,048.11.

7. To the extent that stamp taxes are due on this transaction, Shore agrees to be 100% responsible for the payment of the stamp taxes. Shore agrees to pay the recording fee to record the deed to the Property.

8. Shore shall pay all costs associated with the mediation to AMI.

9. Salamack agrees to be dissociated from Northshore VI, LLC and makes no claim to any membership interest in Northshore VI, LLC.

10. The Parties shall bear their own attorneys' fees and costs in incurred in this dispute and waive any rights to seek fees and costs from other parties except that fees and costs shall be awarded to the extent they are incurred in the enforcement of this Agreement.

11. The Court shall maintain jurisdiction over this matter in order to enforce the terms of this Agreement.

12. **Only upon payment of the $35,000 as referenced in this Agreement**, will Salamack hereby releases and forever discharges Shore, their respective officers, directors, shareholders, members, managers, partners, attorneys, agents, assigns, representatives, successors, insurers, principals, and employees from all claims and demands, causes of action, debts, dues, liabilities, controversies, obligations, suits, disputes and damages whatsoever, whether in law or equity, whether known or unknown, which they, their agents, successors or assigns have or may have against each other, by reason of any matter, cause or thing, which was or could have been asserted in any legal or administrative proceeding. This Agreement shall be binding upon and inure to the benefit of Salamack, and their respective officers, directors, shareholders, members, managers, partners, agents, attorneys, insurers, heirs, assigns, predecessors and successors in interest. It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, whether in law or in equity, whether known, unknown, suspected, unsuspected, manifested, un-manifested or in the past, present or future.

13. Shore hereby releases and forever discharges Salamack, their respective officers, directors, shareholders, members, managers, partners, attorneys, agents, assigns, representatives, successors, insurers, principals, and employees from all claims and demands, causes of action, debts, dues, liabilities, controversies, obligations, suits, disputes and damages whatsoever, whether in law or equity, whether known or unknown, which they, their agents, successors or assigns have or may have against each other, by reason of any matter, cause or thing, which was or could have been asserted in any legal or administrative proceeding. This Agreement shall be binding upon and inure to the benefit of Shore, and their respective officers, directors, shareholders, members, managers, partners, agents, attorneys, insurers, heirs, assigns, predecessors and successors in interest. It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, whether in law or in equity, whether known, unknown, suspected, unsuspected, manifested, un-manifested or in the past, present or future.

14. This Agreement shall be governed by and construed in accordance with the laws of the Territory of the Virgin Islands. If any provision of this Agreement or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Agreement (or the remainder of such provision) shall not be affected thereby.

15. This Agreement constitutes a full, complete and final settlement, according to the terms stated herein, of disputed claims and liabilities claimed and denied. Neither this Agreement nor any statement made, consideration provided, action taken, or document prepared in connection with the negotiation, execution or implementation hereof, shall be deemed or construed as an admission of any liability, fault, wrongdoing, misconduct or breach of duty of any kind by any of the Parties.

16. This Agreement contains the entire agreement and understanding between the Parties regarding the matters set forth herein and supersedes all previous negotiations, discussions and understandings regarding such matters, whether written or oral. The Parties acknowledge and represent that they have not relied on any promise, inducement, representation, or other statement made in connection with this Agreement that is not expressly contained herein. The terms of this Agreement are contractual and not a mere recital.

17. The Parties have read this Agreement and are fully aware of its contents and legal effect. Moreover, the Parties expressly acknowledge that each has had an opportunity to consult with as many advisors as deemed necessary in order to understand fully and completely the Agreement. The Parties have made such investigation of the facts pertaining to this Agreement, and of all the matters pertaining thereto, as they deem necessary.

18. This Agreement cannot be altered, amended or modified in any respect, except by a writing duly executed by the Parties.

19. This Agreement shall be construed without regard to the party or parties responsible for its preparation, and shall be deemed to have been prepared collectively by the Parties. Any ambiguity or uncertainty arising herein shall not be interpreted or construed against any party as the alleged draftsman.

20. Any person signing this Agreement in a representative capacity represents and warrants to the other Parties that he has authority and capacity to sign on behalf of said party, and to make the covenants and promises set forth in this Agreement.

21. This Agreement may be executed in counterparts and shall constitute an agreement binding on all the Parties notwithstanding that all the Parties are not signatories to the original or the same counterpart. This Agreement may be executed with signed, scanned, and emailed signatures, or signed by electronic means which shall be deemed original.

22. Each of the undersigned states that he/she has read the foregoing and knows and understands the contents and meanings thereof and signs the same as his own free act.

This Agreement is deemed executed on the date set forth on the first page.

_____
By:     Steve Shore


**Northshore VI, LLC**

_____
By:     Steve Shore, managing member

_____
By:     Clive Rivers, attorney for Northshore VI, LLC and Steven Shore



_____
By:     Anja Salamack


_____
By:     Michael Sheesley, attorney for Anya Salamack